### SOUTHERN PAC. CO. v. CITY OF PORTLAND.

(Circuit Court, D. Oregon. April 4, 1910.)

No. 3,407.

1. RAILROADS (§ 75*)—RAILROAD ORDINANCES—CONDITIONS.

Where at the time a city passed an ordinance authorizing a railroad company to operate its trains over a street, the city had power under B. & C. Comp. Or. §§ 5077–5078, to designate the street on which the railroad company should locate its road, such power carried with it power to impose reasonable conditions to such permission, which, when accepted by the railroad company, became binding on it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. § 75.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. CONSTITUTIONAL LAW (§ 134*) —STREETS—RIGHT TO USE—CONTRACT.**

Where a city passed an ordinance granting a railroad company the right to use a street for a right of way on certain terms, such ordinance, when accepted, became in effect a contract between the city and the railroad company, whether it be regarded as a franchise, license, or mere permission, and the city could not subsequently revoke, impair, or destroy the rights conferred.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 344; Dec. Dig. § 134.*]

**3. RAILROADS (§ 77*)—POLICE POWERS—EXERCISE—EFFECT.**

The passage of an ordinance granting a railroad company the right to operate its railroad along certain streets subject to the reserved power to make and alter regulations, etc., did not deprive the city of its police powers, nor of the right to exercise the authority expressly reserved.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 197, 198; 1315; Dec. Dig. § 77.*]

**4. RAILROADS (§ 223*)—USE OF STREETS—REGULATORY ORDINANCES.**

A city ordinance authorizing a railroad company to use a street, and reserving to the city the right to make and alter regulations governing the conduct of the road within the limits of the city, to regulate the speed of the cars and locomotives within such limits, and to restrict the running of locomotives at such times and in such manner as might be deemed necessary, reserved to the city the right to make such rules and regulations covering the operation of the road as might be deemed necessary, even to the extent of prohibiting the use of steam locomotives or freight cars on the street.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 725–729; Dec. Dig. § 223.*]

**5. RAILROADS (§ 223*)—USE OF STREETS—MUNICIPAL ORDINANCES—CONSTRUCTION.**

Reserved power to a city to regulate the operation of railroads granted the right to use certain streets if involved or doubtful should be construed in favor of the city and against the grantee.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 223.*]

**6. RAILROADS (§ 77*)—REGULATION—POLICE POWER.**

A city ordinance, granting a railroad company the right to operate its road along certain streets of a city on certain terms, was necessarily made and accepted subject to the city's right to the exercise of its power to make such regulations concerning the operation of the road as public safety and welfare might from time to time require, which power could not be contracted away.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 77.*]

**7. CONSTITUTIONAL LAW (§ 101*)—MUNICIPAL CORPORATIONS (§ 625*)—FRANCHISES—REGULATION—MUNICIPAL ORDINANCES—POLICE POWER.**

A city ordinance prohibiting a railroad from operating steam locomotives and freight cars along a street on which the company had been authorized to construct its road, subject to regulatory provisions subsequently adopted, did not impair any of the railroad's vested rights, and was not objectionable as an arbitrary exercise of the city's police power.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 209–211; Dec. Dig. § 101;* Municipal Corporations, Cent. Dig. §§ 1378, 1379; Dec. Dig. § 625.*]

In Equity.    Suit by the Southern Pacific Company against the City of Portland.    Bill dismissed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Wm. D. Fenton, Ben C. Dey, R. A. Leiter, and James E. Fenton, for plaintiff.

John P. Kavanaugh and W. C. Benbow, for defendant.

BEAN, District Judge. This is a suit to enjoin the city of Portland from enforcing ordinance No. 16,491, adopted in May, 1907, making it unlawful for the Oregon Central Railroad Company, "its successors, assigns or their lessees, or any other person, firm or corporation, to run or operate steam locomotives or freight cars over, upon or along Fourth street between Glisan street and the southerly limits of the city of Portland, from and after 18 months from the final passage or approval of this ordinance, excepting freight cars for the reconstruction, repair or maintenance of the railway lawfully and rightfully on said street." The plaintiff is occupying and using the street in question for railway purposes, as the assignee, lessee, or successor in interest of the Oregon Central Railroad Company, which, by ordinance No. 599, approved January 6, 1869, was "authorized and permitted to lay a railway track and run cars over the same along the center of Fourth street, from the south boundary line of the city of Portland to the north side of 'G' (now Glisan) street, and as much farther north as said Fourth street may extend or be extended upon the terms and conditions" as therein provided. By section 3 of the ordinance:

"The common council reserve the right to make or alter regulations at any time as they deem proper for the conduct of the said road within the limits of the city, and the speed of railway cars and locomotives (within said limits) and may restrict or prohibit the running of locomotives at such time and in such manner as they may deem necessary."

The terms and conditions of the ordinance were accepted by the grantee, and it proceeded to construct its road along the street, and such road has ever since been used and operated by it and its successors in interest for railway purposes, and numerous freight and passenger trains propelled by steam locomotives now pass over the road daily.

At the time of the passage of ordinance No. 599, the city had no express authority given it to grant franchises for the construction or operation of railroads on its streets. Under the general law of the state, however, a railroad corporation was authorized, when necessary and convenient in the location of its road, "to appropriate any part of any public road, street or alley or public grounds"; but, if it desired to appropriate a street within the limits of an incorporated town or city, the company was required to locate its road upon such street as the local authorities might designate. Section 5077–5078, B. & C. Comp. Or.

The plaintiff contends that this legislation and the ordinance of the city designating the street upon which its grantee should locate its road gave to the grantee and its successors or assigns a perpetual right or franchise to use the street for railway purposes, which cannot be revoked or impaired by subsequent legislation, and that ordinance No. 16,491 is void, so far as it prohibits the use of steam locomotives or freight cars on or along the street because: First, it impairs the obligation of the contract under which the road was located, and inter-

feres with vested rights of property; second, it deprives the plaintiff of its property without due process of law; third, it deprives it of the equal protection of the laws; and, fourth, it is an unlawful interference with interstate commerce.

The position of the city, on the other hand, is: First, that at the time of the passage of ordinance No. 599 the city had no power or authority to grant franchises for the use of its streets for railway purposes; second, that such ordinance was merely a license or permission on the part of the council to the grantee named therein to use the street, revocable at any time; third, that the grant was personal to the grantee, and it had no power or authority to assign or transfer the rights thereby granted without the consent of the city; and, fourth, that by the terms of the ordinance the city reserved the right to regulate the use of the street for railway purposes to the exclusion of steam locomotives and freight cars therefrom whenever in the judgment of the council such legislation was necessary or advisable.

I do not deem it necessary to consider all of these questions at this time. In any view, the city was vested with the right and power at the time ordinance No. 599 was passed to designate the street upon which the company should locate its road, and this carried with it the power to impose reasonable conditions to such grant or permission which, when accepted by the grantee, became binding upon it. Pittsburg, C. & St. L. Ry. v. Hood, 94 Fed. 618, 36 C. C. A. 423; Southern Bell Tel. & Tel. Co. v. City of Mobile, 162 Fed. 523.

Whether the ordinance is considered a franchise, license, or mere permission, it gave the consent of the city to the use of the street for railway purposes upon certain terms and conditions, and when accepted became in effect a contract between the city and the company. It may be conceded for the purposes of this case that the city could not subsequently revoke the permission thus given or impair or destroy the rights thereby conferred. No attempt is made to do so by ordinance No. 16,491. Its only purpose is to regulate the use of the railroad. The passage of ordinance No. 599 did not deprive the city of its police powers (N. P. v. State of Minnesota, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. Ed. 630; Beer Co. v. Mass., 97 U. S. 25, 24 L. Ed. 989; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205), nor of the right to exercise the power and authority expressly reserved and stipulated in the contract between it and the railroad company. The grant or permission was made or given by the city and accepted by the company upon the terms and conditions therein specified, which, among other things, included the right of the city to make regulations for the conduct of the road at any time the common council might deem proper, to regulate the speed of the cars and locomotives, and to restrict and prohibit the running of locomotives at such times and in such manner as the council may deem necessary. The authority thus reserved is broad and general in its terms, and, while a technical construction of some of the language may support the argument of the plaintiff that it was thereby intended to reserve the power to regulate and not prohibit the use of steam locomotives, I think the plain intention was to reserve the right to make such rules and regulations covering the operation of the road as might, from time to time, be nec-

177 F.—61

essary even to the extent of prohibiting the use of steam locomotives or freight cars whenever such legislation might be necessary for the safety or convenience of the public. If, however, the language of the ordinance is involved or doubtful, it should be construed against the grantee and in favor of the public, for, as said by the Supreme Court in O. R. N. v. Oregonian Ry., 130 U. S. 1, 9 Sup. Ct. 409, 32 L. Ed. 837:

"When a statute makes a grant of property, powers, or franchises to a private corporation or to a private individual, the construction of the grant in doubtful points should always be against the grantee, and in favor of the government."

See, also, to the same effect, Freeport Wtr. Co. v. Freeport City, 180 U. S. 587; 21 Sup. Ct. 493, 45 L. Ed. 679; Burns v. Multnomah Ry. Co. (C. C.) 15 Fed. 177.

I conclude, therefore, that the legislation complained of is valid because within the powers reserved to the city by the ordinance under which the plaintiff is now occupying the street.

But if I am mistaken in this view it is still, in my opinion, valid because within the general police power of the city. The grant, permission, license, or authority, whatever it may be called, of plaintiff's grantor to occupy the street for railway purposes, was necessarily made and accepted subject to the right of the city, under its police power, to make such regulations concerning the use thereof as the public safety and welfare might from time to time require. The legitimate exercise of legislative power in securing the public safety, health, and morals is not within the inhibition of the federal Constitution against the impairment of obligations of contracts, the deprivation of property without due process of law, or the equal protection of the laws, for, as said by Mr. Chief Justice Fuller:

"The governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury." N. Y. & N. E. R. R. v. Bristol, 151 U. S. 567, 14 Sup. Ct. 437, 38 L. Ed. 269.

Every grant, therefore, of a public franchise or right, is subject to the legitimate exercise of police power by the state or municipality, and it has been decided that the power to order and establish suitable police regulations authorizes municipal corporations to prohibit the use of steam locomotives in the public streets when such action does not interfere with vested rights. Railroad Co. v. Richmond, 96 U. S. 521, 24 L. Ed. 734.

There is no express stipulation in ordinance No. 599 that the grantee should be permitted to use steam locomotives as a motive power for the propelling of trains over the road therein specified, or that it might use freight cars thereon. The right granted was simply to lay "a railroad track and run cars over the same," and nothing is said about motive power or the character of the cars. The grantee, therefore, occupied the street subject to the general power of the city in respect to the use of the road when constructed. The legislation complained of, therefore, does not impair any vested rights expressly given by the ordinance, and it is not for the court to determine in this case whether

the power reserved to the city has been judiciously exercised. It is clearly not void as an unreasonable or arbitrary exercise of such power. At the time the city granted to the plaintiff's predecessors in interest authority or permission to occupy Fourth street for railway purposes, the street was an unimproved back street with scattering dwellings along it and no business houses. It is now practically in the heart of the business district and is one of the principal business streets of the city. It is frequented daily by a large number of persons, teams, and vehicles constantly traveling along and across the street during business hours. It is quite steep throughout the business district, and the noise, vibration, smoke, cinders, and soot from the moving steam locomotives and trains seriously interfere with the transaction of public and private business, and it is a constant source of danger and inconvenience to the public.

The court therefore cannot declare that the provisions of the ordinance sought to be enjoined are unreasonable or arbitrary, and, since it is within the legitimate police power of the municipality, it must be upheld.

It follows that the complaint must be dismissed, and it is so ordered.