## SWITCHING CHARGES DISTINGUISHED FROM CHARGES FOR TRANSPORTATION.

Common Pleas Court of Hamilton County.

THE J. B. DOPPES' SONS LUMBER COMPANY v. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY, AND THE CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY COMPANY.

Decided, March 22, 1913.

*Railways—Charges for Shipment from a Local Station on One Road to its Municipal Terminus and Thence to a Private Switch Within the Municipality on Another Road—Sections 8998, et seq.*

1. The rule that the remedy of a shipper who has been aggrieved by an overcharge for carriage must be found in an application to the State Railroad Commission or the Interstate Commerce Commission, is not applicable where the relief sought is recovery of the penalty attaching to an overcharge for a switching service within the limits of a municipality. *Townsend* v. *Central Trust Co.*, 187 Fed., 63, distinguished.

2. A shipper who has been compelled to pay to a railway company an overcharge for a switching service rendered within the limits of a municipality is an aggrieved party within the meaning of the penal statute and may maintain an action for recovery of the penalty provided in cases of such overcharge.

*Dolle, Taylor & O'Donnell,* for plaintiff.
*Harmon, Colston, Goldsmith & Hoadly,* contra.

GORMAN, J.

Decision on motions for judgment on the pleadings.

This is an action brought by the plaintiff against the two defendants above named to recover the sum of $150 as a penalty under Section 9002 of the General Code.

The petition in substance alleges that the defendant companies have connecting tracks, and that the plaintiff has a side-track contiguous to and connected with the main tracks of the Cincinnati, New Orleans & Texas Pacific Railway Company; that the tracks of the other defendant company are connected therewith; that all of these tracks are within the proper terminal limits of the city of Cincinnati and that the distance from the plaintiff's side-track to the general freight house of the Cincinnati, New Orleans & Texas Pacific Railway Company, in said city, does not exceed five miles. The plaintiff further says that in good faith and in the due course of business, on October 2, 1911, it caused to be transported over the road of the defendant, the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, from Fernbank, in Hamilton county, to plaintiff's siding in the city of Cincinnati, a carload of lumber, and requested that said shipment be made to its switch, known as the "Doppes switch," connected with the tracks of the Cincinnati, New Orleans & Texas Pacific Railway Company. It further alleges that the defendants, the Cleveland, Cincinnati, Chicago & St. Louis Railway Company and the Cincinnati, New Orleans & Texas Pacific Railway Company, demanded and received from plaintiff for switching from the tracks of the said Cleveland, Cincinnati, Chicago & St. Louis Railway Company onto and over the tracks of the other defendant company to the plaintiff's siding, the sum of six dollars, in addition to charging five dollars for transporting said car from Fernbank over the Cleveland, Cincinnati, Chicago & St. Louis Railway to Cincinnati; whereas, under the statute, Section 9000, General Code, neither of said defendants had the right to charge more than two dollars for said switching service; and that said charge of six dollars was an excess charge over and above that allowed by law (Section 9000, G. C.) of four dollars. Plaintiff fur-

ther avers that it has been aggrieved by said overcharge and has been compelled to pay the same and it asks for a recovery against the defendant companies in the sum of $150, as a penalty, for the violation of the statutes in such cases made and provided.

The defendants by their answers have substantially set up the same defense. They practically admit all the allegations of the petition, but each avers that the shipment of the carload of lumber was from Fernbank to the switch of the plaintiff, consigned by it to itself, and that this shipment was a *transportation* of freight and not a *switching* of freight, and further that said transportation of freight was between a local station on the line of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Fernbank, and a local station on the line of the Cincinnati, New Orleans & Texas Pacific Railway Company, to-wit: "Doppes switch."

A demurrer was interposed to each of these answers and Judge O'Connell of this court, in November, 1912, overruled the same and held that the answers constituted a good defense to the action. No opinion was written by Judge O'Connell giving his reasons for overruling the demurrers, but the court is informed by counsel, both for the plaintiff and for the defendants, that they were overruled on the authority of *Dixon* v. *Central Railway Company*, 110 Ga., 173, which case distinguishes *transportation* from *switching*.

When this case came on to be heard before this individual member of this court and a jury, a motion was interposed on behalf of both of the defendants for a judgment on the pleadings, and a motion was also interposed on behalf of the plaintiff for a judgment on the pleadings. We have therefore the anomalous situation presented of both the plaintiff and the two defendants claiming that each is entitled to a judgment upon the averments in the petition and the answers.

The court is of the opinion that an action may be maintained by a shipper under Section 9002, General Code, to recover a penalty for a violation of Sections 8997, 8998, 8999 and 9000, General Code.

The United States Circuit Court of Appeals, for the Sixth Circuit, in the case of *Townsend* v. *Central Trust Company*, 187

Fed., 63, decided by Judges Severens, Knappen and Sanford, has held that the shipper has no right of action against a railroad company for a violation of these sections of the statute, and that the remedy of the shipper who has been aggrieved by an overcharge must be found in proper cases by due application for the enforcement of the provisions of these statutes, for the benefit of shippers, to the Ohio Railroad Commission and the Interstate Commerce Commission.

The court, in that case, failed to notice the provisions of Section 3376, Revised Statutes, now Section 9002 of the General Code, which provides that a company which violates any of the provisions of these sections above cited, or which demands and receives a greater sum of money for the service provided for in such sections, shall pay to the party *aggrieved* for every such overcharge a sum equal to double the amount of the overcharge, but in no case less than $150.

Now, it appears to this court that a shipper who has been obliged to pay this overcharge is a *party aggrieved,* and inasmuch as this is a penal statute, the benefits of which are extended to all *parties aggrieved,* it would seem that an action will lie in favor of the shipper to recover the penalty where there has been a violation of the law.

The case of *Townsend Brick Company* v. *Central Trust Company, supra,* arose on an intervening petition in the Circuit Court of the United States for the Northern District of Ohio, against the Wheeling & Lake Erie Railroad Company and the Zanesville Belt & Terminal Company, the intervening petitioner being a shipper of freight on these roads, which were in the hands of a receiver appointed by the said Circuit Court of the United States. The intervening petitioner in that case prayed for an injunction against the Zanesville Belt & Terminal Company and the Wheeling & Lake Erie Railroad Company, and its receiver, to restrain them from maintaining increased tonnage rates for switching on said belt line company's tracks and prayed for a mandatory injunction requiring said companies to haul all freight cars upon said belt line between the petitioner's manufacturing establishment and connecting railway lines at rates not exceeding two dollars per car, and that the railway companies

and receivers be restrained from attempting to collect from the petitioner, the shipper, any charge in excess of the rate of two dollars per car, as provided by the laws of Ohio, etc.

The Circuit Court of the United States for the Northern District of Ohio dismissed the intervening petition on demurrer and the case was appealed to the circuit court of appeals, where the judgment of the circuit court was affirmed and the appeal dismissed with costs.

Among other points passed upon by the court of appeals in this case was the construction to be given to Sections 3340 and 3341 of the Revised Statutes of Ohio, now Sections 8997, 8998, 8999, 9000 and 9001 of the General Code, the aforesaid two sections of the Revised Statutes having been split up into the five said sections of the General Code. Section 3376 of the Revised Statutes, now Section 9002 of the General Code, was not under consideration in this case, nor was any reference made thereto by the circuit court of appeals. The federal court was merely called upon to determine whether or not an injunction should issue, and held that it should not under the facts set out in the intervening petition.

There is no doubt as to the correctness of the conclusion of the United States Circuit Court and Court of Appeals in that case, but the law applicable to that case should go no further than the facts of that case would warrant. The intervening petitioner, the Townsend Brick Company, had an adequate remedy at law by an appeal to the Ohio Railroad Commission and to the Interstate Commerce Commission for an order directing the said railroad companies to refrain from making overcharges in excess of two dollars per car. The intervening petitioner could therefore obtain the same relief by a resort to the forums of the law as it sought to obtain by an appeal to a court of chancery for an injunction and a mandatory injunction.

It is a well established principle of equity that an injunction will never be granted in any case where the party asking it has a plain adequate remedy at law.

Now, the court of appeals in this case, on page 72, says:

"In so far as the rights of the individual shippers are concerned, we are constrained to conclude that if the aggregate

rate charged by such railway companies for hauling and delivering the freight, including the switching charges, are unjust and unreasonable, the remedy of the shippers must be found in proper cases by due application for the enforcement of the provisions for the benefit of shippers which are contained in the Ohio Railroad Commission Act and the Interstate Commerce Act and their amendments.''

These acts afford ample relief to shippers who are obliged to bring to a period the practices of the railroad companies in making overcharges, and inasmuch as the Townsend Brick Company sought no relief in their intervening petition except to restrain the railroad companies from making overcharges and to compel them to carry freight at the rate fixed by the laws of Ohio, the intervening petitioner was asking in equity what he could have secured in the forums of the law, and therefore it would appear that the decision of the courts in this case is bottomed upon sound equitable principles. The language used by the court in this case in the third paragraph of the syllabus, and on page 71, to the effect that Sections 3340 and 3341, Revised Statutes of Ohio, create no right of action whatever against either of the companies in favor of any individual shipper, must be construed in the light of the case which the court had under consideration and within reason can only mean that these sections created no right to an injunction in favor of the shipper.

The Court of Appeals did not have under consideration Section 3376, Revised Statutes, now Section 9002, General Code, nor was there any action pending before the court in the Townsend case to recover a penalty—a money judgment—purely an action at law, under Section 9002, General Code (R. S. 3376).

The case at bar is one under Section 9002, General Code, formerly Section 3376, R. S., to recover this penalty which the Legislature has provided shall be paid to the *party aggrieved* for every overcharge; and the sum allowed for a violation of the statute is double the amount of the overcharge and in no case to be less than $150, to any *bona fide* claimant using the road of such company or demanding or receiving any such service in the due course of business.

Now, it can not be seriously contended that the plaintiff, a shipper, is not a party aggrieved when he is obliged to pay an

overcharge; nor can it be maintained with any degree of reason that the shipper is not a *bona fide* claimant using the road of the company making the overcharge; neither can it be reasonably asserted that such shipper did not receive the service of switching set out in the petition in the due course of business.

It can not be material to the railroad company which brings the freight for the shipper into the city or town where the shipper has the freight consigned, that another railroad company which does the switching makes an overcharge, because the delivering railroad company will not eventually be required to pay this overcharge. The overcharge is made by the receiving company which places the car upon the shipper's side-track, and while this charge may not be made directly against the shipper, it is made against the delivering company, and the delivering company, after paying the overcharge to the receiving company, collects the same from the shipper. The real party aggrieved is the shipper, who has to pay this overcharge, and it would seem upon reason and a fair construction of the language of Sections 8998, 9000 and 9002, General Code, that the Legislature intended to give to any party who had been injuriously affected by an overcharge on the part of any railroad company for any of the services provided for in these sections, 8997 to 9002, inclusive, a right of action to recover the penalty.

The court is of the opinion that the decision of the federal court above cited, is not inconsistent with the claim of the plaintiff in this case that it is entitled to recover the penalty provided for in Section 9002 of the General Code.

Now as to the case of *Dixon* v. *Central Railway Company*, 110 Ga., 173, the authority upon which it is claimed my former associate, Judge O'Connell, overruled the demurrers to the answers of the defendants herein, the court is of the opinion, after a careful reading of the same, that this decision is not in favor of the contention of the defendants, but rather supports the contention of the plaintiff herein. It is claimed by the defendants herein that the hauling of the carload of lumber for the plaintiff from Fernbank to Cincinnati, over the Big Four railroad, and then from the Big Four, where it connects with the Cincinnati, New Orleans & Texas Pacific, over the Cincinnati, New Orleans

& Texas Pacific to Doppes switch, was a transportation and not a switching.

The court is of the opinion that the carriage of the carload of lumber from Fernbank, on the line of the Big Four, to Cincinnati, was a transportation. Doppes' lumber yard is located in Cincinnati and within the terminal limits, as alleged by the petition and admitted by the answers. A switching service was defined in the case just cited, 110 Ga., as follows:

"A switching or transfer service is one which precedes or follows a transportation service and applies only to a shipment on which legal freight charges have already been earned or are to be earned."

The court, in that case, gives this illustration of what would be a switching or transfer service: if a shipment were made from Macon, Georgia, to Savannah, Georgia, the shipper would be liable for regular rates of transportation from Macon to the railway terminal at Savannah; then if the freight were to be transported from the terminal at Savannah, from the depot of the delivering company, over the track, side-track or main track of another company, to the side-track of the shipper, this carriage would constitute switching or transfer service. Or, if the shipper desired to ship a carload from Savannah, Georgia, to Macon, Georgia, and his side-track were not connected with the road over which he desired to ship and it would be necessary to have the car transported from his side-track over the main track, spurs or side-tracks of one road to the freight station of the road which was to carry the freight to Macon, then the service required to transfer the car to the road which would carry the car to Macon, would constitute switching or transfer service.

Now, in the case at bar, the transportation was completed when the car of the plaintiff company reached its destination within the terminal limits of the Big Four Railroad Company at Cincinnati. Thereupon, the Big Four Railroad Company would be obliged to turn the car over to the Cincinnati, New Orleans & Texas Pacific, to be carried over its tracks to Doppes switch, and if all of these tracks were within the terminal limits of Cincin-

nati, then it appears to the court that there can be no question that such service constitutes switching service within the meaning of the statutes of Ohio, Sections 8997 to 9002, inclusive.

With all due respect to the decision of my former associate on the demurrers to the answers filed herein, I am unable to concur with him that these answers present a defense to the action of the plaintiff.

The Court of Common Pleas of Hamilton County is but one court and the ruling by one individual judge of that court stands as a ruling of the Court of Common Pleas of Hamilton County. If there has been any error in an interlocutory matter in any case heard in the court of common pleas by the individual judge who finally disposes of the case, or by any other individual member of the court, it appears to me that that error should not be perpetuated in the record if there is an opportunity to correct it upon final judgment.

The case is now before me for final judgment, and, in view of the conclusion to which I have come upon the insufficiency of the answers of the defendant companies to the petition, I feel that I would be perpetuating an error if I did not at this time exercise my best judgment in determining whether or not the plaintiff or the defendants are entitled to a judgment on the pleadings.

In these modern days of progress the courts must endeavor to keep pace with the times and decide causes on reason and according to equitable principles as well as legal rules. Courts should not be compelled, against their better judgment and against reason, to blindly follow a "calf-path" of precedents merely for the sake of following precedent.

After considerable hesitation, I have come to the conclusion that I ought to decide this case according to reason and justice, regardless of the ruling made by Judge O'Connell upon the demurrers.

The conclusion of the court therefore is, that the motions of the defendants for a judgment on the pleadings should be overruled, and the motion of the plaintiff for a judgment on its petition will be granted.