SOUTH McALESTER-EUFAULA TELEPHONE CO. v. STATE *ex rel.* BAKER-REIDT MERCANTILE CO. *et al.*

No. 260.  Opinion Filed January 11, 1910.

(106 Pac. 962.)

1. **MUNICIPAL CORPORATIONS—Streets—Power to Permit Erection of Poles.** Authority on the part of an incorporated city or town to grant to any person, natural or artificial, a right to erect telephone or telegraph poles in the public streets can only be derived from the supreme legislature, by express grant, or by necessary implication from powers expressly granted.

2. **TELEGRAPH AND TELEPHONES—Right to Place Poles in Streets—Companies in Indian Territory.** Telephone companies doing business in the Indian Territory prior to statehood obtained their authority to construct their lines along and over the streets and public ways of the incorporated cities and towns therein by virtue of section 3 of the act of Congress approved March 3, 1901 (Act March 3, 1901, c. 832, 31 Stat. 1083), and the rules and regulations of the Secretary of the Interior promulgated thereunder.

3. **SAME—Power of Municipality to Regulate Rates.** Under that part of section 3, supra, which provides "That incorporated cities and towns into or through which such telephone or telegraphic lines may be constructed, shall have power to regulate the manner of construction therein," said incorporated cities

and towns were not granted the power to fix rates for telephone charges, by ordinance or otherwise, or to exclude telephone lines from the use of their streets upon compliance with said section 3, supra, and said rules and regulations of the Secretary of the Interior. Where such power is attempted to be exercised by the passage of an ordinance including such provisions, the telephone company will not be required to adhere to them by a court by mandamus.

Williams, J., dissenting.

(Syllabus by the Court.)

Mandamus by the State, on the relation of the Baker-Reidt Mercantile Company and others, against the South McAlester-Eufaula Telephone Company. Decree for plaintiffs and defendant brings error. Reversed and remanded, with directions.

*S. H. Harris, Henry E. Asp,* and *J. R. Spielman,* for plaintiff in error.—Citing: *Muskogee Nat. Tel. Co. v. Hall* (Ind. Ter.) 64 S. W. 600; *City of St. Louis v. Tel. Co.* (Mo.) 10 S. W. 197; *State ex rel. v. Tel. Co.* (Mo.) 88 S. W. 41; *Home Tel. & Tel. Co. v. City of Los Angeles,* 211 U. S. 265; *People ex rel. v. Tel. Co.* (Ill.) 77 N. E. 245; *State v. Mayor, etc., of Newark,* 8 Atl. 128; *State ex rel. v. Tel. Co.* (Wis.) 114 N. W. 108; *Mo. River Tel. Co. v. City of Mitchell* (S. D.) 116 N. W. 67; *Bank of Augusta v. Earl,* 13 Pet. 595; *State v. City of Sheboygan,* 86 N. W. 661; *Farmer & Getz v. Tel. Co.,* 74 N. E. 1078; *Southern Bell. Tel. Co. v. City of Richmond,* 103 Fed. 31; *Abbott v. City of Duluth,* 104 Fed. 833; *Michigan Tel. Co. v. Benton Harbor,* 80 N. W. 386; *Wichita v. Trust Co.,* 132 Fed. 631; *Wichita v. Tel. Co.,* 78 Pac. 886; *Macklin v. Tel. Co.,* 24 Ohio Cir. Ct. Rep. 446.

*Wright & Roberts,* for defendants in error.—Citing: *City of St. Louis v. Davidson* (Mo.) 14 S. W. 825; *Charles Simons' Sons Co. v. Tel. Co.* (Md.) 57 Atl. 193; *People ex rel. v. Suburban R. Co.,* 178 Ill. 594; *Muncie Nat. Gas Co. v. City of Muncie* (Ind.) 60 L. R. A. 826; *Hitchcock v. Galveston,* 6 Otto 341; *Atchison Street Ry. Co. v. M. P. Ry. Co.* (Kan.) 3 Pac. 285; *Columbus Water Co. v. Mayor, etc., of City of Columbus* (Kan.) 28 Pac. 1087; *Jackson, etc., R. Co. v. Interstate, etc., Ry. Co.,*

24 Fed. 306; *State ex rel. v. Railway Co.* (Fla.) 10 So. 590; *Mayor of City of Houston v. Street Ry. Co.* (Tex.) 19 S. W. 127; *N. W. Tel. Exc. Co. v. Minneapolis* (Minn.) 53 L. R. A. 175; *Fergus Falls v. Hotel Co.* (Minn.) 50 L. R. A. 170; *In re Pryor,* 55 Kan. 724; *City of Detroit v. Street Ry. Co.,* 184 U. S. 368; *Railway Co. v. McCarthy,* 6 Otto 267.

KANE, C. J. This was a proceeding in mandamus, commenced by the defendants in error, plaintiffs below, against the plaintiff in error, a corporation, defendant below, to compel it to restore certain telephone instruments to the business houses of the plaintiffs, and to furnish adequate toll service between Hartshorne and McAlester and intermediate points. Plaintiff's petition alleged, in substance, that on or about the 29th day of June, 1904, the telephone company was granted a franchise to own, operate, and maintain a telephone exchange in the town of Hartshorne, Oklahoma; that by the terms of said franchise certain business houses were to have the use of the local telephone instruments and exchange, together with toll service to South McAlester and intermediate points, at a rate of $3 per month; that said franchise was properly passed, approved, and published as an ordinance of the incorporated town of Hartshorne, Ind. T. (now city of Hartshorne, Okla.) ; that said company has furnished continuously to said town said service at the rate named in the franchise, without objection on its part; that on or about April 1, 1908, said company refused to furnish said service to said plaintiffs, although requested to do so, and although said company was tendered the amount of said service under said franchise in good and lawful money of the United States; that said refusal of said company leaves said plaintiffs without the service which said company promised to give under said franchise at the time of granting the same; that said plaintiffs were justly entitled to said service under the terms of said franchise. Upon this showing an alternative writ of mandamus was issued.

The defendant's answer to the alternative writ alleged, in substance, that said writ should not have been issued, and should

now be dissolved for the reason that if all the allegations and statements set up in the petition for said writ were true plaintiffs would not be entitled to the relief sought. Further answering said alternative writ, said defendant admitted that it constructed and now operates and maintains a telephone exchange in the town of Hartshorne, Pittsburg county, state of Oklahoma; that said telephone exchange was constructed and is operated and maintained under and by virtue of an act of Congress of March 3, 1901 (Act March 3, 1901, c. 832, 31 Stat. 1083), and the rules and regulations of the Secretary of the Interior thereunder prescribed; that all the provisions of said act and the said rules and regulations have been complied with by the defendant and the authority and permission in said rules referred to obtained. It admitted that the ordinance set out in plaintiff's petition upon which their prayer for relief was based, was duly enacted by said town council of said town of Hartshorne, Ind. T., but insisted that said town of Hartshorne or its town council had no authority to enact said ordinance to regulate the rates to be charged by said defendant for the telephone service rendered in said town.

The cause was submitted to the court below upon the pleadings, and the court, after hearing argument of counsel and being fully advised in the premises, decreed that the alternative writ of mandamus theretofore issued against the defendant "be and the same is hereby made peremptory." To reverse this decree the defendant filed this proceeding in error in this court.

To more fully present the law questions involved in this controversy the parties stipulated, in substance, in this court: That the plaintiff in error constructed its telephone exchange in the town of Hartshorne subsequent to the enactment of the ordinance referred to in the petition. That at said time it recognized said ordinance as an agreement and contract between the plaintiff in error and the said town, and the plaintiff in error continued to operate said telephone exchange pursuant to said arrangement and agreement until about the time of the beginning of the controversy presented herein. That about said time the plaintiff in error being of the opinion that the granting of a rate to certain

subscribers of $2.50 per month without the privilege of long distance service free of charge, and the granting of a rate to other subscribers of $3 per month including long distance service free of charge, amounted to a discrimination between such subscribers, and that such rate was not sufficiently remunerative. That prior to, the beginning of this suit the plaintiff in error demanded of the Baker-Reidt Mercantile Company the rate of $2.50 per month for a telephone in said exchange, and refused to furnish to said party a telephone at $3 per month including long distance service free of charge to the points mentioned in said ordinance. That plaintiff in error demanded the said rate of $2.50 per month, and in addition thereto the usual toll charges for long distance service to the points mentioned in said ordinance, as well as all other points outside of said city. That in said controversy the complainant demanded said service at the rate of $3, including said long distance service, on the ground that the said franchise and ordinance were binding upon the plaintiff in error, and as matter of law fixed the rate of charges for the services demanded. On the other hand, the plaintiff in error denied that said ordinance constituted any legal restriction upon the right of the plaintiff in error to charge other or different rates than those mentioned in the ordinance and especially denied that said ordinance had the legal effect of preventing the plaintiff in error from charging the said complainant the sum of $2.50 per month for telephone service in said exchange and in addition thereto the usual long distance tolls for service to the points outside of said city mentioned in said ordinance.

Counsel for defendants in error contend, first, that at the time of the adoption of said ordinance the said town of Hartshorne possessed the legal authority to impose the conditions therein set forth in relation to charges for service, and second, that even if the said town of Hartshorne did not possess the legal authority to impose such conditions then that the acceptance of said franchise and the construction of said telephone exchange pursuant thereto estopped the plaintiff in error from denying the power of the town to impose the conditions with reference to rates

of charges. The grounds upon which counsel for defendants in error base their contention are that the act of Congress giving to the Secretary of the Interior the right to grant rights of way to telephone and telegraph companies applies only to rights of way through any Indian reservation, through any lands held by an Indian tribe or nation held in the Indian Territory, through any lands reserved for an Indian agency or an Indian school, or for other purposes in connection with the Indian service, or through any lands which have been allotted in severalty to any individual Indian under any law or treaty, but which have not been conveyed to the allottee with full power of alienation, and cannot be applied to lots or streets and alleys in incorporated towns in the Indian Territory.

As it will be necessary to give to the act of Congress the construction contended for by counsel in order to sustain their first contention that this municipality under its ordinary, general power and authority over its streets and highways within its limits, for the promotion of the health, safety, and morals and general welfare of its inhabitants, had a right to impose conditions upon the telephone company in consideration for the grant of the use of its streets, we must examine the act to determine whether it will bear this interpretation. Section 3 of the act of Congress above referred to, approved March 3, 1901 (Act March 3, 1901, c. 832, 31 Stat. 1083), reads as follows:

"That the Secretary of the Interior is hereby authorized and empowered to grant a right of way in the nature of an easement, for the construction, operation, and maintenance of telephone and telegraph lines and offices for general telephone and telegraph business through any Indian reservation, through any lands held by an Indian tribe or nation in the Indian Territory, through any lands reserved for an Indian agency or Indian school, or for other purpose in connection with the Indian service, or through any lands which have been allotted in severalty to any individual Indian under any law or treaty, but which have not been conveyed to the allottee with full power of alienation, upon the terms and conditions herein expressed. No such lines shall be constructed across Indian lands, as above mentioned, until authority

therefor has first been obtained from the Secretary of the Interior, and the maps of definite location of the line shall be subject to his approval. The compensation to be paid the tribes in their tribal capacity and the individual allottees for such right of way through their lands shall be determined in such manner as the Secretary of the Interor may direct, and shall be subject to his final approval; and where such lines are not subject to state or territorial taxation the company or owner of the line shall pay to the Secretary of the Interior, for the use and benefit of the Indians, such annual tax as he may designate, not exceeding five dollars for each ten miles of line so constructed and maintained, and all such lines shall be constructed and maintained under such rules and regulations as said Secretary may prescribe. But nothing herein contained shall be so construed as to exempt the owners of such lines from the payment of any tax that may be lawfully assessed against them by either state, territorial, or municipal authority; and Congress hereby expressly reserves the right to regulate the tolls or charges for the transmission of messages over any lines constructed under the provisions of this act: Provided, that incorporated cities and towns into or through which such telephone or telegraph lines may be constructed shall have the power to regulate the manner of construction therein, and nothing herein contained shall be so construed as to deny the right of municipal taxation in such towns and cities. * * *"

Pursuant to this act of Congress, the Secretary of the Interior on the 6th day of November, 1901, provided by rule that:

"No company or individual is authorized to establish or maintain a local telephone exchange in any incorporated city or town in the Indian Territory, under the provisions of the act of March 3, 1901, until authority therefor has been first obtained from the Secretary of the Interior. Any company or individual desiring to obtain such permission must file an application therefor in this office for transmission to the Secretary of the Interior. Such application should, in as particular manner as possible, outline the general plan of the proposed system, and must be accompanied in the case of a company or corporation, by the showing required in subdivisions 1 to 7, both inclusive, of paragraph 3 of the Regulations of March 26, 1901. If this showing has been made in connection with an application for a long distance or other telephone line, a reference to the previous application will be sufficient. This office, before transmitting such applica-

tion to the Secretary of the Interior, will obtain an expression of the views of the city or town authorities upon the general plan of the proposed exchange. The general outline of the plan should be submitted in duplicate. The foregoing regulations shall be observed, so far as applicable, by any individual seeking to procure permission to establish or maintain a telephone exchange in any incorporated city or town in the Indian Territory, and particularly as to the purpose, intent, and financial ability of the applicant."

It is admitted that the act of Congress and the rules of the Secretary of the Interior have been complied with by the plaintiff in error.

The ordinance under which the defendant in error claims a right to the relief prayed for is entitled:

"An ordinance granting to the South McAlester-Eufaula Telephone Company, its successors and assigns, the right to erect and maintain and operate a telephone exchange and its telephone lines within the limits of the incorporated town of Hartshorne, Indian Territory."

Section 2 of said ordinance provides:

"In consideration of the rights and privileges herein granted said company, its successors and. assigns hereby covenant and agree to furnish and keep in good order and repair in the mayor's office of said town and in the recorder's office of the said town and in each school building of said town and in the depot of said town a first-class telephone instrument to be used by said town and its officers free of all cost and charges within the town of Hartshorne as long as the privileges herein granted are exercised, and said company shall keep in first-class working order all local telephones and lines, and all toll telephones and lines, and if at any time any telephone or lines get out of good working order the same shall be repaired and put in good working order within three (3) days after notice being given the central office at Hartshorne. And the said company shall at no time charge greater rates for the use of its telephone instruments within the limits of the said term than two dollars and fifty cents ($2.50), instruments used in business houses of said town; than two dollars ($2.00) for instruments used by professional men of said town; than one dollar and fifty cents ($1.50) for instruments used in residences, and shall not charge to exceed the sum of fifteen (15) cents for toll over its lines between Hartshorne and

South McAlester to its local subscribers, not more than three ($3) for instruments used in business houses, with free service to Mc-Alester, South McAlester and all points between South McAlester and Hartshone, for each month of service, it being understood that the company will allow to persons renting telephone in this town communications over its telephones and lines to the town of Haileyville, Indian Territory, and to the town of Gowen, Indian Territory, free of the ordinary toll charge."

Counsel for plaintiff in error contend that the act of Congress above set out granted to the telephone company authority to construct its lines in and through the incorporated towns of the Indian Territory; that the only privilege granted such towns, which were purely the creatures of Congress, was the power to regulate the manner of construction; that such towns were not granted the authority, direct or implied, to grant franchises to such companies in consideration for the use of its streets by the act of Congress or the laws of the state of Arkansas in force in Indian Territory. Of course it is conceded that the law is that the power to grant such a right or franchise must be vested in the governing body of a city or town, by a legislative grant of the sovereign government. It is well settled that "authority on the part of a municipality to grant to any person, natural or artificial, a right to erect telegraph or telephone poles, etc., in the public streets, can only be derived from the Legislature by express grant or by necessary implication from powers expressly granted." *State et al. v. Mayor, etc., of Newark et al.,* 49 N. J. Law, 344, 8 Atl. 128. The Department of the Interior construed the act of Congress in harmony with the views of counsel for plaintiff in error. Upon the theory, no doubt, that that part of the act which provides that no such lines shall be constructed across Indian lands, as above mentioned, until authority therefor has first been obtained from the Secretary of the Interior, etc., applied to incorporated towns, it provided by rule that:

"No company or individual is authorized to establish or maintain a local telephone exchange in any incorporated city or town in the Indian Territory, under the provisions of the Act of

March 3, 1901, until authority therefor has been first obtained from the Secretary of the Interior."

Whilst it is true the courts are bound to construe all laws coming before then according to their own judicial views, yet the practical construction put upon an act by the governmental officers particularly charged with its execution ought not to be disregarded. Moreover, the construction placed upon the act by the department seems to have met the approval of a court of high authority within the jurisdiction where the act operates. *Muskogee Nat. Telephone Co. v. Hall et al.*, 4 Ind. T. 18, 64 S. W. 600, was a bill in equity by the telephone company against Hall *et al.* to enjoin the erection of a telephone plant at Tulsa. Mr. Justice Clayton, who delivered the opinion of the court, in speaking of the conditions obtaining in the Indian Territory under the laws of Arkansas then in force and the act of Congress now under discussion, says:

"As to the defendants, the legislation of the Creek Nation was local and constitutional, and therefore, unless rendered void by some statute, the franchise created by it is valid and exclusive as to them. The Curtis bill does not give to cities and towns in the Indian Territory the power to grant such franchises, nor to enter into contracts for the construction and operation of a telephone system. The only powers conferred upon them is such as is conferred by Mansfield's Digest upon municipal corporations in Arkansas. Sections 754 and 755 (sections 524 and 525, Ind. T. Ann. St. 1899) are as follows:

" 'Sec. 754. They shall have power to provide for lighting the streets and alleys of the city by gas or otherwise, and to authorize the construction of gas works and of street railroads.

" 'Sec. 755. For the purpose of providing water, gas or street railroads the mayor and council may contract with any person or company to construct and operate the same, and may grant to such person or company for the time which may be agreed upon the exclusive privilege of using the streets and alleys of such city for such purpose or purposes.'

"But nowhere does it appear that they have power to make such contracts as to telephone, and it does not exist. It may be true that by virtue of the ordinary powers of municipal corporations, even in the absence of express legislation, they may per-

mit or refuse to permit street cars or other quasi public business, to be used only for local purposes, the use of their streets and alleys. But they cannot, by implied power, confer corporate franchise, or authorize the taking of tolls. This must come from the Legislature. 2 Dill. Mun. Corp. 724. See, also, section 698. Municipal corporations in this jurisdiction have no such powers, and therefore, whatever may have been the extent of the grant of the town of Tulsa to the defendants, it conferred no rights, save the mere naked permission of the town to the defendants to enter upon the streets and alleys and erect their poles and wires. It granted no franchise. It was no legal contract, and gave to the defendants no other or better standing in court than if the by-law conferring the supposed right had not been passed. And the same can be said as to the permission granted by the interior department of the government to the defendants to establish and operate a system of telephone exchange within the town of Tulsa. The act of March·3, 1901 ([Act March 3, 1901, c. 832]31 Stat. 1083), conferring upon the Secretary of the Interior the power to grant a right of way for telephone lines, etc., over and through lands held by Indian tribes or nations in the Indian Territory, had not then been passed. At that time the Secretary of the Interior was without power to grant such rights, except in so far as that such permission would have the effect of giving them, as being white men, the right to be in the Indian Territory lawfully, and not as intruders."

The third paragraph of the syllabus reads as follows:

"The act of Congress March 3, 1901, devested from the Creek Nation and conferred upon the Secretary of Interior full control over all telegraph and telephone lines in the Indian Territory, whether local or interstate, and such act is constitutional, at least so far as it applies to all territory of the Creek Nation not actually occupied by lines of telephone, and did not impair any vested rights of a corporation having a franchise from the Creek Council which had not erected telephone lines in the city wherein the controversy over conflicting rights arose."

The third paragraph of the syllabus of the same case in the Circuit Court of Appeals (118 Fed. 382, 55 C. C. A. 208), reads:

"Congress having provided, by Act March 3, 1901 (31 Stat. 1083), for the granting of franchise for telephone lines in the Indian Territory, in the exercise of its power to regulate com-

merce among the states and with the Indian tribes, such legislation necessarily annulled any grants previously made by one of the Indian nations which conflict therewith."

In discussing this proposition in the opinion, Thayer, Circuit Judge, who delivered the opinion of the court, says:

"It is argued in behalf of the appellant, and that view seems to have been adopted by the United States Court of Appeals in the Indian Territory (*Telephone Co. v. Hall* [4 Ind. T. 18] 64 S. W. 600), that because the defendants below were engaged in erecting a telephone line simply within the town of Tulsa, and had not, so far as shown, made a connection with lines outside of the nation, the exclusive franchise in question did not interfere in any way with interstate commerce, and may be upheld against it as a valid grant. The fault with this reasoning is that the exclusive feature of the grant was void *ab initio*. It did not remain in force until the defendants had extended their line of telephone to the borders of the nation, and ceased to be operative when they had made a connection with some exterior line of telephone; but it was invalid from the time the grant was made, being an attempt on the part of the nation to exercise a power vitally affecting interstate commerce, which did not belong to it. *Pensacola Tel. Co. v. W. U. Tel. Co.*, 96 U. S. 1, 11, 24 L. Ed. 708. Even if this were not so, and even if it should be conceded that until Congress legislated on the subject the exclusive feature of the franchise might be upheld, yet, when Congress, on March 3, 1901 ([Act March 3, 1901, c. 832] 31 Stat. 1083), in the exercise of its constitutional power to regulate commerce, saw fit to provide how franchise for the construction and maintenance of telephone lines within the Indian Territory must be obtained, such action on its part necessarily prevailed over all local regulations on the subject, and operated to extinguish such exclusive rights to construct and maintain lines of telephone or telegraph within the territory as had theretofore been granted. No act of the Creek Nation on a subject within the lawful jurisdiction of the federal government can be given the effect of nullifying or interfering to any extent with legislation by the Congress of the United States, when it sees fit to pass laws on the subject."

Counsel for defendants in error contend that the rule of the Department of the Interior construing the act of Congress being formulated by a subordinate officer of that department, to wit,

the Commissioner of Indian Affairs, that such construction is merely persuasive and not entitled to much weight, and discredits the other authorities cited by saying that the parts of these opinions construing this act of Congress were merely *dicta.* However this may be, it cannot be disputed that the Court of Appeals of the Indian Territory in *Muskogee Nat. Tel. Co. v. Hall et al., supra,* held that while the incorporated towns of the Indian Territory were, by the laws of Arkansas in force therein, for the purpose of providing water, gas, or street railroads, granted the power to contract with any person or company to construct and operate the same, and may grant to such person or company for the time which may be agreed upon, the exclusive privilege of using their streets and alleys for such purpose, it also held that "Nowhere does it appear that they have power to make such contracts as to telephone, and it does not exist." If these municipalities did not derive such power from the laws of Arkansas in force in the Indian Territory there is, to our mind, little room to argue that they were conferred by the act of Congress. We are of the opinion that sound reason as well as the weight of authority supports our construction of these acts, and, besides, it harmonizes conditions in the Indian Territory, with the scheme of government approved by the people when they adopted the Constitution of the state.

Section 15, art. 9, of the Constitution, provides for the creation of a corporation commission; and section 18 of the same article provides that:

. ."The Commission shall have the power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service facilities, and

conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations and requirements, the Commission may, from time to time, alter or amend."

That the power to regulate the charges for public service by municipal corporations is a power which it was the intention of the framers of the Constitution should be exercised by the sovereign power only is further evidenced by section 7 of article 18, entitled, "Municipal Corporations," which provides that:

"No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality shall divest the state or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment. Nor shall the power to regulate the charges for public service be surrendered, and no exclusive franchise shall ever be granted."

While the latter consideration may not be of great weight in the construction of these statutes, yet it is entitled to mention as a fortuitous circumstance, at least.

It follows that telephone companies doing business in the Indian Territory prior to statehood obtained their authority to construct their lines along the streets and public ways of the incorporated towns therein by virtue of section 3 of the act of Congress approved March 3, 1901 (Act March 3, 1901, c. 832, 31 Stat. 1083), and not from the municipal authorities. The latter had the power under said section to regulate the manner of construction, but this power did not carry with it the power to fix rates for telephone charges or to exclude telephone companies from the use of the streets upon compliance with section 3, *supra,* and the rules and regulations of the Secretary of the Interior promulgated thereunder. Where such power was attempted to be exercised by the passage of an ordinance including such provisions, the company will not be required to adhere to them. That the power to regulate the manner of construction does not grant the authority to fix rates for telephone charges by contract, franchise, or ordinance, is settled by the case of *Home Tel. & Tel. Co. v. City of Los Angeles et al.,* 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176. In that case authority to regulate

rates of telephone companies in the state of California was granted in almost the same language as the act of Congress in question. Pursuant to this authority the city entered into a franchise or contract with the Home Telephone Company by which the rates were fixed. Later the city passed an ordinance changing such rates. The court held that the city was not estopped from taking such action by the fact that the company had made large expenditures under the former ordinance. In discussing this proposition, Mr. Justice Moody says:

"The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. No other body than the supreme legislature (in this case, the Legislature of the state) has the authority to make such a surrender, unless the authority is clearly delegated to it by the supreme legislature. The general powers of a municipality or of any other political subdivision of the state are not sufficient. Specific authority for the purpose is required."

In the case of *In re Johnston*, 137 Cal. 115, 69 Pac. 973, it is held:

"When the sovereign authority of the state, either in its Constitution or through its Legislature, has created a right, and expressed and defined the conditions under which it may be enjoyed, it is not within the province of a municipality where such right is sought to be exercised or enjoyed to impose additional burdens or terms as a condition to its exercise. The Constitution does not authorize the municipality to require a permit as a condition upon which the pipes may be laid in its streets, and its claim of a right to require a permit includes the right to refuse one, and the right to annex one condition to the exercise of the privilege implies the right to annex others, which may at least impair, if not in fact amount to a denial of its exercise. The provision that the work is to be done under the direction of the superintendent of streets gives all the protection for the use of the streets that could be obtained under a permit; and, under the provision authorizing the municipality to prescribe regulations for damages and indemnity for damages, the city will be fully protected against any pecuniary loss or detriment."

This language is quoted with approval in the case of *Sunset Telephone & Telegraph Company v. City of Pomona* (C. C. A.) 172 Fed. 829.

Having reached the foregoing conclusions on the question of the construction of section 3 of the act of Congress, *supra*, and the power conferred upon incorporated towns thereunder, it is obvious that the line of authorities relied upon by counsel for defendant in error, to the effect that when a municipality by ordinance duly enacted has granted a telephone or telegraph company the right to occupy and use its streets and public ways, and fix and settle the manner of such occupancy and use, and the privileges thereunder granted are accepted by the company and acted upon, the grant and acceptance becomes a binding contract between such company and the municipality, the obligations of which cannot be avoided or impaired, are not in point. These cases all arise under state laws where the sovereign powers of the state have, in a large sense, been delegated to municipalities, granting them general power over and almost absolute control of their streets, alleys, and public ways. As is said in one of them:

"In such cases the municipal corporation is to be regarded as a subordinate agency of the government for the administration of local affairs which the Legislature, in its discretion, has invested with the powers and prerogative necessary to a complete government of its own affairs."

The case at bar, to our mind, more nearly falls within the rule approved in *Abbott et al. v. City of Duluth* (C. C.) 104 Fed. 833; *Southern Bell Tel. & Tel. Co. v. City of Richmond,* 103 Fed. 31, 44 C. C. A. 147; *Mich. Tel. Co. v. City of Benton Harbor,* 121 Mich. 512, 80 N. W. 386, 47 L. R. A. 104; *Wichita v. Old Colony Trust Co. et al.,* 132 Fed. 641, 66 C. C. A. 19; *City of Wichita v. M. & K. Tel. Co.,* 70 Kan. 441, 78 Pac. 886; *Macklin v. Home Tel. Co.,* 24 Ohio Cir. Ct. R. 446, and numerous other cases cited by counsel for both sides. In *Macklin v. Home Tel. Co., supra,* the two classes of cases above referred to are commented upon and distinguished as follows:

"In such case the rights obtained from such municipality, by a telegraph or telephone company, would be very valuable and would likely be a good consideration for any reasonable promise or agreement, as to rates to be charged for telephone or telegraph service, or in other regards, that such company might make. Not so, however, in this state, or in any state where the right of use of the public ways is given directly to the company from the sovereign by express legislative grant, and there is only given to the municipality the power of police and the right to agree upon and fix the manner of such use, which right is not exclusive, but is shared by the probate court, and is only in furtherance of the municipality's plain duty, to keep the public ways 'open, in repair and free from nuisance.' Neither the police power nor the right to fix the manner of use, is the subject-matter of barter, and both must be exercised exclusively in the interests of the public, for the public good and public welfare, and not for public gain, and most certainly not for such financial advantage as might arise and inure to only a small portion of the public. So, if we are correct thus far, it would seem to follow that, in Ohio, a municipality has no valuable right to confer on a telephone company; nothing in fact, that the law would regard as a consideration either valuable or good, to support a contract between the telephone company and the city, fixing a rate of charge for telephone service, and if the rate stipulated is to be sustained and enforced, it must be upon consideration, other than the conferring of a valuable right upon the telephone company to occupy and use the streets and alleys of the city."

Upon the question of estoppel, counsel for defendants in error contend that as the privileges granted the company by the terms of the ordinance have been, and are being fully enjoyed by it, it cannot be permitted to take and retain all the advantages and benefits of the ordinance, and escape the performance of the duties to the public imposed thereby upon the ground that the ordinance is *ultra vires*. It must be remembered, though, that the telephone company did not depend for its right to use the streets of Hartshorne upon a grant from the municipal authorities. The Congress of the United States directly invested it with the right to use such streets for the purposes of its incorporation. Under such circumstances there is no room for the

application of the doctrine of estoppel. The town of Hartshorne, so far as telephone companies were concerned, had no authority over its streets beyond that conferred by the act of Congress and the regulations of the Secretary of the Interior, and was therefore without power to grant a franchise covering such use. A franchise is a right or privilege granted by the sovereignty to one or more parties to do some act or acts, which they could not do without this grant from the sovereign power. *Bank of Augusta v. Earle,* 13 Pet. 519, 10 L. Ed. 274.

There is authority to the effect that:

"A grant of the right to use the streets for telephone poles though not a franchise, becomes, when the privileges granted are accepted, a binding contract between the parties which cannot be revoked or rescinded except for cause." (2 Abbott's Municipal Corporations, § 834.)

But this sort of a contract cannot arise unless the municipality attempting to make the grant of the right to use the streets has been clothed with power to do so by the supreme legislature. If municipalities are not clothed with such power, as was held by the Supreme Court of Ohio, in *Farmer & Getz v. Columbiana County Telephone Co.,* 72 Ohio St. 526, 74 N. E. 1078, "they have not power to exact or receive compensation by way of free telephone service for themselves or for citizens, or to fix rates for telephone charges. Where such power to so obtain free service and fix rates is attempted to be exercised by the passage of an ordinance incorporating such provisions, the company will not be required to adhere to them by a court of equity by mandatory injunction, even though it be shown * * * that the company thereby obtained a benefit which it would not have otherwise obtained, in a mode of use of the streets more beneficial to it and more convenient to the public."

The rule of estoppel invoked in this case rests upon the unassailable ground that "A man who has enjoyed a privilege has no right to say that because he ought not to have enjoyed it he will not pay for it." But in the case at bar the telephone company had a right under the act of Congress to enjoy the priv-

ilege it did, and the ordinance of the town of Hartshorne added nothing to its enjoyment. As was said by Mr. Justice Clayton in *Muskogee Nat. Tel. Co. v. Hall et al., supra.* "It granted no franchise. It was no contract, and gave to the defendants no other or better standing in court than if the by-law conferring the supposed right had not been passed."

The judgment of the court below is reversed and the cause remanded, with directions to dismiss the same.

Dunn, Hayes, and Turner, JJ., concur; Williams, J., dissents.