## HUCKINS HOTEL CO. v. SOUTHWESTERN BELL TELEPHONE CO.

No. 15712—Opinion Filed Nov. 24, 1925.

Rehearing Denied April 27, 1926.

**1. Contracts—Construction—Clause Subordinate to Main Intention—Telephone Service.**

One paragraph of a contract expresses in explicit terms the intention of the parties as to the consideration, providing for telephone service to be rendered by the one, and certain definite payments to be made by the other party. A second paragraph purports to remunerate or recoup such other party for certain services to be rendered by it to the telephone company, but the language thereof is ambiguous and uncertain as to the basis of such recoupment. Held, that such second paragraph is subordinate to the main intention and object of the parties as expressed in the first paragraph, and, under statutory canons of construction, including the attending circumstances, will not be given a construction that will modify or destroy, but that will uphold the main intention of the parties as expressed in the first paragraph.

**2. Franchises—Construction Favorable to Public.**

Where the meaning of a grant or contract regarding any public franchise is ambiguous or doubtful, it will be construed favorably to the rights of the public.

**3. Disposition of Cause.**

Under the foregoing, held, the judgment for plaintiff on the pleadings was erroneous.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Action by the Southwestern Bell Telephone Company against the Huckins Hotel Company. Judgment for plaintiff and defendant appeals. Reversed and remanded.

Everest, Vaught & Brewer, for plaintiff in error.

Harris, Spielman, Thomas & Harris and Claude Nowlin, for defendant in error.

Opinion by ESTES, C. For convenience, the telephone company, plaintiff below, will

be referred to as plaintiff, and the hotel company, as defendant. In 1912, defendant, as first and second parties, entered into a written contract with Pioneer Telephone Company, as third party, of which company, plaintiff is the successor, providing that plaintiff should maintain not to exceed 450 telephones in the guests' rooms of the Huckins Hotel belonging to defendant, in which defendant had already installed its system of wires and the like for such purpose; and to maintain a private branch telephone exchange in said hotel, it being contemplated that the service should be for both local and long distance purposes; that plaintiff should furnish the necessary help for the operation of such exchange, but that defendant should pay all wages therefor; that the contract should continue for three years, and thereafter until terminated by 30 days written notice from either party to the other. Among other things, the contract also provided:

"The said party of the third part is to receive as compensation for the installation of said private branch exchange and for maintaining the same as provided in this contract, a rate of 25 cents per month per telephone, payable monthly in advance, on the first day of each month, **and a fee of five cents for each and every call from the hotel to any telephone in the city exchange of said party of the third part,** and the regular out of town or toll charges in any and all calls from within the hotel to any out of town point. The **party of the second part agreeing to pay** to the party of the third part, the Pioneer Telephone & Telegraph Company, **weekly all such charges, both for connections with the city exchange and out of town toll charges,** as above specified, deducting no fee or commission for such collection.

"It is agreed that the party of the second part is to **receive 50 per cent. of the revenue derived from the collection of local calls only from telephone stations in the hotel,** it being understood, however, that this re**fers only to the revenue derived from the connection of the private branch exchange to the city exchange in Oklahoma City,** and does not include any toll charges for connections outside of the city of Oklahoma City."

Said parties operated under said contract, the defendant charging its guests five cents for each local call, and paying one-half thereof to the plaintiff, from 1912 until January, 1920. From and after January, 1920, the defendant collected from its various patrons ten cents for each local call and remitted one-half thereof for about seven months to the plaintiff, at which time the defendant demanded the return of $1,149.57, since said January, in excess of 2½ cents per call.

On failure of the plaintiff so to do, the defendant retained said amount out of tolls on long distance calls. In this action, the plaintiff, in its first cause, asks judgment for $2,075.82 and interest, being the difference between 2½ cents per call, conceded and paid by defendant from August 21, 1920, to June 20, 1921, and five cents per call, the amount claimed by plaintiff during said time. In its second cause of action, the plaintiff asked judgment for said $1,149.-57 and interest. To the petition of plaintiff was exhibited the said written contract. The defendant answered, admitting the contract and its performance in manner substantially as outlined above, alleging that there never was a verbal agreement between the parties with reference to the raising of the said rate from five to ten cents; that when the contract was made in 1912, labor was cheap, and that the retention by defendant, as provided in said contract, of 2½ cents per local call was sufficient for the purpose only of paying the actual expense of such calls to said hotel until 1920; that then, because of the increased expense of clerical help and the like, in charging and keeping the book accounts of such calls, with the guests of the hotel, it was necessary to increase the charge for local calls from the hotel, and that it did so without any knowledge or consent of the plaintiff, and that such charge was made for the service rendered to its guests, and, in effect, that same was of no concern to the plaintiff; that the auditor of defendant inadvertently and by error paid the plaintiff one-half of ten cents per call for said seven months, instead of 2½ cents; that the defendant refused to pay said sum to the plaintiff and had retained said sums on notice to the plaintiff for such purpose; that such sums never were due the plaintiff under the terms of the said contract; that under the regulations of the Corporation Commission, plaintiff could not lawfully charge more than said five cents and, having agreed to pay defendant one-half thereof, was limited to 2½ cents, as the net amount to plaintiff. The motion of the plaintiff for judgment on the pleadings was, by the trial court, sustained, from which the defendant appeals. The sole question presented involves the construction of said contract.

1. The first quoted paragraph of the contract divides the compensation to be received by the plaintiff for furnishing said service—like all Gaul—into three parts. The first is a fixed compensation of 25 cents per month, payable monthly in advance for each telephone installed in the hotel; second, five cents for each local call; and third,

all tolls for long distance calls. The second and third were to be paid weekly, "deducting no fee for such collection." This paragraph constituted the running gears of the contract—the quid pro quo—the service to be rendered by the one and the payments to be made by the other. It expressed the purpose which the parties sought to accomplish. There is nothing uncertain about it. It is alleged by plaintiff, in substance, and so contended in the brief, that the defendant was bound to pay the five cents as firmly as it was bound to pay the other items; and that plaintiff was to furnish the service for the fixed price of five cents, called a fee, for local calls, and the other considerations named. We concur with both paties in such construction of the first paragraph.

In passing, we note that this contract was not prepared with the usual legal precision. The second paragraph evidently means that sometime, the exact time or times not being fixed by the contract, the plaintiff should pay the defendant for the services rendered in collecting and remitting for both local and long distance calls—a sort of recoupment under this contract. The circumstances, gathered from the pleadings, further show that the defendant had wired its building, was paying the operators and housing the fixtures for the private exchange, booths and the like; collecting, accounting for and remitting all receipts for both local and long distance calls, besides paying 25 cents per month for each guest phone in the rooms. The basis of such payment was "50 per cent. of the revenue derived from the collection of local calls." It thus appears that the intention of the parties to this contract is plain and fairly deducible, unless it be in one respect. The contention of plaintiff, as alleged in its petition, is that:

"The compensation to be derived by the said defendant hotel company, * * * was and is fixed at 50 per centum of whatsoever revenue was derived by said defendant from the users of said local telephones in said hotel. That said paragraph 'Y' (second) in no manner limits, restricts or affects the fee of five cents to be paid by defendant to said telephone company for each local call as specified in paragraph 'X' (first). That paragraph 'Y' makes the question of compensation to said hotel company depend upon the amount of revenue received by said hotel company from the users of said local telephones for local calls only from stations in the hotel, and if said hotel company made no charge whatsoever for said service, it would receive no revenue therefrom by the terms of said contract, but would be required, and was required, by the terms of said contract, to pay and settle with the telephone company under the provisions of paragraph 'X' heretofore set out."

Defendant contends that 50 per cent. of the revenue derived means that derived by plaintiff—the five cent fee fixed in paragraph 1. Assuming, as the parties contend, that paragraph 2 is ambiguous or uncertain, the following statutory canons of construction are applicable, the guiding star for the interpretation of contracts being the intention of the parties. Contracts must be interpreted so as to give effect to the mutual intention of the parties as it existed at the time of the contract, so far as the same is ascertainable and lawful. The whole of ·a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others. A contract may be explained by reference to the circumstances under which it was made. Particular clauses are subordinate to its general intent. Plaintiff concedes that its contention is based solely on paragraph 2 and not on paragraph 1 or any other part of the contract. Since the language of paragraph 2 does not make the revenue, or money derived or collected by either party, the basis for compensating defendant, we must construe paragraph 2 with paragraph 1, and observe the other canons of construction, in determining whether such basis is the revenue derived or received by plaintiff or by defendant. Under paragraph 1, no one but plaintiff could "derive" any "revenue." True, paragraph 1 contemplates that defendant should collect the five cents, but it also provides that all thereof shall be paid weekly to plaintiff; so that plaintiff thus "derived" all thereof, that is, all the fee of five cents. Thus construing paragraph 2 with paragraph 1, tends to the conclusion that the "revenue derived," as used in paragraph 2, refers to the five cent fee derived or paid, under paragraph 1, to plaintiff. Said paragraph is in the nature of a particular clause, subordinate to the general intent of the parties as expressed in the first paragraph. This general intent was that the plaintiff was bound to furnish the service and defendant bound to pay said five cents and other amounts therefor. By payment of said five cents and the other payments, defendant had bought the service and could donate same to its guests. This is conceded by plaintiff. Had defendant donated this service to its guests, it was, nevertheless, bound by paragraph 1 to pay said five cents—no more nor less. It is thus contended by plaintiff. If defendant had reduced its charge from five cents to

three cents to its patrons for such local calls, and had proffered plaintiff one-half of the decreased charge, would not and could not the latter have said promptly and rightfully, "You are bound by your contract to pay five cents for each such call?" If defendant was bound by said five-cent basis, plaintiff was also bound thereby. In other words, in the absence of any provision in the contract for increasing or decreasing the five-cent charge, that charge was an absolute one fixed by the parties. Plaintiff seems to concede that defendant could arbitrarily, and without the knowledge or consent of plaintiff, increase such local charge, but contends that if it did so, the latter was bound to pay the former—this suit being to recover—one-half of such charges and collections as so increased. If the parties had contemplated that such charge would be increased, they had so provided in the first paragraph that plaintiff should receive five cents for each such call, and one-half of whatever amount above five cents defendant might collect. It was certainly contemplated at the time that defendant should charge its guests the said five cents. Such charge was the established and customary charge; and, indeed, is so generally to this day. This record shows it was not within the contemplation of the parties, at the time they entered into this contract, that such charge of five cents for local calls would be increased, or what division should be made of any increased charge. Neither was it contemplated that such charge be increased nor that no charge at all be made by defendant. If defendant could arbitrarily increase such charge to its guests and be bound to pay one-half of such increased charge as "the revenue derived from the collection of local calls"—there being no provision in the contract for a sliding scale of charges—by the same token, defendant could decrease such charge, or make no charge at all, and be bound to pay plaintiff only one-half of such decreased charge, or nothing whatever, if no such charge be made. We cannot think that such was the intention of the parties at the time. We conclude that the 50 per cent. of the revenue derived from the collection of local calls, provided in said latter paragraph, meant to the parties at the time nothing more nor less than one-half of said five cent charge—50 per cent. of the "fee" already made binding on both parties by paragraph 1. It meant the same as if the word "said" had been used in the latter paragraph before the word "revenue"— meaning said fee of five cents. This construction makes the latter paragraph sub-

ordinate to the main intention of the parties, and gives meaning and effect to both paragraphs according to the attending circumstances at the time of the contract. By the other construction, the main agreement would be destroyed by implication, that is, by reading into the second paragraph that which would destroy such intent found in the first paragraph. If our construction does read the word "said" into the second paragraph, it does not destroy said intent and plain language of paragraph 1.

Germane to the last statutory rule, supra, is that laid down by the courts, stated in 13 C. J. 540, thus:

"The main object of the contract, or the purpose which the parties sought to accomplish, is to be considered in ascertaining their intention, and particular parts of the contract must be so construed as to harmonize with such purpose, if possible."

In Colorado Telephone Co. v. Fields (N. Mex.) 110 Pac. 571, it is held:

"Where a contract as a whole discloses a given intention, if certain words and clauses taken literally could defeat that intention, they will be construed, if possible, so as to be consistent with the general intention."

We are further constrained to such construction from the following considerations: Plaintiff, being a public utility, was entitled to make a charge sufficient to yield a reasonable income on its investment. This court will presume that such five-cent charge was sufficient for such purpose, and comported with the orders of the Corporation Commission under its authority in such matters, as alleged in the answer of defendant. If plaintiff agreed to pay one-half thereof to defendant for making the collections and other service, the net rate of 2½ cents per local call, together with the other charges made, would yield such lawful income as plaintiff was entitled to receive, and the contract was made thus compatible with the law. If plaintiff was entitled to charge a greater rate, it had made application to the Corporation Commission and procured same. Since the life of the contract was three years from 1912, and thereafter until terminated by notice from either party, we presume that such five cents continued to be a sufficient and reasonable rate for plaintiff, since plaintiff did not terminate such contract prior to January, 1920, when defendant began charging its guests said ten cents. If defendant could arbitrarily make no charge for such local calls, and consequently pay nothing to plaintiff on this account, then defendant, under this contract, could deprive plain-

tiff of receiving such reasonable rate of income on its investment as a public utility.

2, 3. As held in State ex rel, DeBurg v. Water Supply Co. (N. M.) 140 Pac. 1059:

"Where the meaning of a grant or contract regarding any public franchise is ambiguous or doubtful, it will be construed favorably to the rights of the public."

It is contended by plaintiff that defendant by paying 50 per cent. of all amounts received for local calls, construed this contract from its date, 1912, until January, 1920, to mean and include 50 per cent. of any increased amounts so received. In order to sustain such contention, we must assume the construction of the contract contended for by plaintiff. This is to beg the question. The defendant simply paid one-half of the five-cent charge which it was making all these years. This was in strict accord with the letter of said contract as contended for by defendant in this action. It is well settled that a motion for judgment on the pleadings is both a motion and a demurrer. The plaintiff's said motion for judgment on the pleadings, which was sustained by the trial court herein, in so far as the same partook of the nature of a demurrer, admitted all facts well pleaded by defendant. Said motion, therefore, admitted that the payment of one-half of ten cents collected by defendant on local calls during said seven months, was paid, as alleged, by error. If defendant, during said seven months, considered that it owed plaintiff one-half of all sums collected—one-half of ten cents—it was a matter to be tried out on the facts. It is not true under the motion for judgment herein. We conclude, therefore, that the learned trial court erred in sustaining the motion for judgment on the pleadings.

Let the judgment be reversed, and the cause remanded for further proceedings.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. pp. 521. § 482, 527, § 486; 540, §509; 542, § 514. (2) 26 C. J. p. 1032, § 72. (3) 31 Cyc. p. 608; 12 R. C. L. p. 194; 2 R. C. L. Supp. p. 1401; 4 R. C. L. Supp. p. 749; 5 R. C. L. Supp. p. 636.