Dear Representative Wright,
¶ 0 This office received a request for an official Attorney General Opinion from your predecessor, Representative Don Weese, addressing, in effect, the following questions:
1. May a charter municipality authorize a company, without avote of the people, to provide telecommunications services to thepublic pursuant to its existing franchise, which is a franchiseto own and operate a system for the manufacture, transmission,distribution, and sale of electricity to the municipality and thepublic generally, without violating the provisions of ArticleXVIII, § 5(a) of the Oklahoma Constitution?
2. Is a company that provides telecommunications services to thepublic required to obtain a franchise to operate within theboundaries of a municipality under Article XVIII, § 5(a) of theOklahoma Constitution?
3. Is a franchise to provide telecommunications servicesassignable without being subject to the voting provisions ofArticle XVIII, § 5(a) of the Oklahoma Constitution?
4. Since 1987, a company has been paying a fee for the use of aright-of-way for its telecommunications business pursuant to therate established under its electric franchise rather than the$0.75/per foot rate that other companies are charged under apermitting system. Is this a proper charge, and if not, is themunicipality required to collect the proper right-of-way userfees from 1987 to the present?
 I. MUNICIPAL FRANCHISING AUTHORITY
¶ 1 Municipal corporations have no inherent power or authority and can exercise only those powers that are granted to them expressly or by necessary implication under the Oklahoma Constitution and the statutes. Development Industries v. City ofNorman, 412 P.2d 953, 956 (Okla. 1966). A municipal charter "which is adopted and approved in accordance with the Constitution and which is not inconsistent therewith becomes the organic law of the city." Oliver v. City of Tulsa,654 P.2d 607, 609 (Okla. 1982). Such a municipal charter "supercedes all laws of the state in conflict therewith insofar as such laws relate to merely municipal matters." Id. In Oklahoma, the governing bodies of municipalities have the power to "[r]egulate and control the use of streets, roads and other public ways within the limits of the municipality." 11 O.S. 1991, §36-101[11-36-101](1). In addition, municipalities have the authority to grant franchises to certain types of companies that will use the streets and public ways of the municipalities in conducting a business affected with a public interest under Article XVIII, § (5)(a) of the Oklahoma Constitution. Oklahoma Gas ElectricCompany v. Total Energy, Inc., 499 P.2d 917, 922 (Okla. 1972).
¶ 2 The term "franchise" has been defined by the Oklahoma Supreme Court as "a right or privilege granted by the sovereignty to one or more parties to do some act or acts, which they could not do without this grant from the sovereign power." SouthMcAlester-Eufaula Telephone Co. v. State, 106 P. 962, 968 (Okla. 1910) (citation omitted). A franchise "grants the holder a right to use public streets, and other public ways, for the purpose of maintaining and operating a business affected with a public interest within the municipality, and embraces the privilege of conducting such business." Oklahoma Gas Electric Company,499 P.2d at 922. Common examples of services that have required a franchise from the sovereign include gas, water, electric, telephone, railway, and other public service corporations. 12 Eugene McQuillin, The Law of Municipal Corporations § 34.07 (Charles R.P. Keating ed., 3d ed. 1986).
¶ 3 Article XVIII, § 5 of the Oklahoma Constitution establishes the procedures by which a municipality may grant a franchise to use the public streets and ways to a business affected with a public interest. Specifically, Article XVIII, § 5(a) provides:
 No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, extended, or renewed for a longer term than twenty-five years.
Okla. Const. art. XVIII, § 5(a) (emphasis added).
¶ 4 Accordingly, a franchise may not be issued without assent from a majority of the qualified voters who vote in an election and the extent of "the authority thus granted [by the voters] islimited by the terms of the proposal and the franchise ordinanceso submitted at the election." City National Bank v. Kiowa,230 P. 894, 895 (Okla. 1924) (emphasis added).
¶ 5 The question presented indicates that the voters of a municipality granted a franchise to an electric company in compliance with this section, and then at some later date, the city officials authorized the electric company to begin providing telecommunications service in the municipality without a vote of the people. Whether the municipality's act exceeded its authority depends, in part, on the terms of the franchise proposal and ordinance approved by a majority of the qualified electors.
¶ 6 In this question, the franchise approved by the electors grants the holder the right to use the streets and ways of the municipality for the purpose of owning and operating a systemand plan for the manufacture, transmission, distribution, andsale of electricity in and to the municipality and the publicgenerally. In general, franchises are strictly construed and, if the meaning of a grant or contract regarding any public franchise is doubtful or ambiguous, it will be construed favorably to the rights of the public. Huckins Hotel Co. v. Southwestern BellTelephone Co., 245 P. 838, 842 (Okla. 1925). Thus, no right or privilege passes through the grant of a franchise by a municipality unless it is clearly stated or necessarily implied.Blair v. Chicago, 201 U.S. 400, 463, 50 L.Ed. 801,26 S.Ct. 427, 441 (1906).
¶ 7 By its express terms, the franchise described in this question grants the holder only the right to provide electric service to the municipality and the public generally. Because the right to provide telecommunications service is not expressly authorized and because that right cannot be necessarily implied, any action by the municipality to authorize provision of telecommunications service pursuant to that particular franchise exceeds its authority. Accordingly, the municipality may not authorize the company to provide telecommunications services pursuant to its existing electric franchise without violating the provisions of Article XVIII, § 5(a) of the Oklahoma Constitution.
 II. POWER OF A TELECOMMUNICATIONS COMPANY TO OPERATE WITHOUT A MUNICIPAL FRANCHISE
¶ 8 Whether a telecommunications company is required to obtain a franchise under Article XVIII, § 5(a) of the Oklahoma Constitution in order to use the streets and ways of a municipality in conducting its business depends, in part, on whether the company falls within the provisions in Article IX, §2 of the Oklahoma Constitution. Article IX, § 2 of the Oklahoma Constitution provides:
 Every railroad, oil pipe, car, express, telephone or telegraph corporation or association organized or authorized to do a transportation or transmission business under the laws of this State for such purpose, shall, each respectively, have the right to construct and operate its line between any points in this State, and as such to connect at the State line with like lines; and every such company shall have the right with its road or line, to intersect, connect with, or cross any railroad or such line.
Okla. Const. art. IX, § 2 (emphasis added).
¶ 9 The Oklahoma Legislature executed this provision through its enactment of Title 18, Section 601 of the Oklahoma Statutes. Specifically, that section provides:
 There is hereby granted to the owners of any telegraph or telephone lines operated in this state the right-of-way over lands and real property in this state, and the right to use public grounds, streets, alleys and highways in this state, subject to control of the proper municipal authorities as to what grounds, streets, alleys or highways said lines shall run over or across, and the place the poles to support the wires are located; also the right to condemn and cross over or under, or build their lines along any railroad property or right-of-way, subject to the necessary use of such property or right-of-way by the railroad company; the right-of-way over real property granted in this section may be acquired in the same manner and by like proceedings as provided for railroad corporations.
18 O.S. 1991, § 601[18-601](a).
¶ 10 Thus, a "telephone or telegraph corporation or association" organized or authorized to do a transmission business in Oklahoma has the right to construct and operate its lines between any points in this State, subject to the control of the municipality as to what grounds, streets, alleys, or highways the lines run over or across, as well as where the poles to support the wires are located.
¶ 11 These provisions have been interpreted to limit municipal control over the operations of telephone and telegraph companies.In City of Tulsa v. Southwestern Bell Telephone Co., the court held that these provisions superseded the provisions of Tulsa's charter which required that a franchise be obtained prior to use of the city's streets and alleys for the construction or operation of a telegraph line or telephone system. City of Tulsav. Southwestern Bell Telephone Co., 5 F. Supp. 822, 827 (N.D. Okla. 1934). Citing to the statewide interest in providing for communication by telephone, the court stated that the "obvious intent [of Article IX, § 2] is to secure to telephone companies the unhampered right to build their lines" and thus, the court rejected the city's claim for certain fees and for ejectment of the company from the city streets. Id. at 827. The interests of the State in assuring a statewide telephone system with coordinated intra and interstate communications has also been held to defeat any municipal interest which would support a conflicting home rule charter power to require a franchise. SeeCity of Shawnee v. ATT Corp., 910 F. Supp. 1546, 1558 (D. Kan. 1995); City of Englewood v. Mountain States Telephone andTelegraph Company, 431 P.2d 40, 43 (Colo. 1967).
¶ 12 Similarly, the Oklahoma Supreme Court has held that a municipality lacks the power to grant a franchise to a telephone or telegraph company where the right to use the public streets for the operation of its business has been granted to the company directly by the Constitution or by the Legislature. SouthMcAlester-Eufaula Telephone Co. v. State, 106 P. 962 (Okla. 1910). Although that case dealt specifically with a grant to a telephone company by the Secretary of Interior prior to statehood, the Court recognized that a similar scheme had been enacted in the Oklahoma Constitution and also stated that "sound reason as well as the weight of authority" supported their construction. Id. at 966. As support for this holding, the Court stated:
 In such case the rights obtained from such municipality, by a telegraph or telephone company, would be very valuable and would likely be a good consideration for any reasonable promise or agreement, as to rates to be charged for telephone or telegraph service, or in other regards, that such company might make. Not so, however, in this state, or in any state where the right of use of the public ways is given directly to the company from the sovereign by express legislative grant, and there is only given to the municipality the power of police and the right to agree upon and fix the manner of such use. . . . So, if we are correct so far, it would seem to follow that . . . a municipality has no valuable right to confer on a telephone company; nothing, in fact, that the law would regard as a consideration. . . .
Id. at 968 (citation omitted).
¶ 13 Because "telephone or telegraph corporation[s] or association[s]" have been granted the right to use the public streets and grounds in Oklahoma by the Constitution and by statute, municipalities do not have the power to require these types of companies to obtain a franchise prior to using the public streets and ways.[1] A municipality may not prevent a "telephone or telegraph corporation or association" from operating within its boundaries, but may only exercise control as to what grounds, streets, alleys, or highways the company uses in the conduct of its business. City of Tulsa, 5 F. Supp. at 826.
¶ 14 The question presented, however, relates to the authority of the municipality to authorize a company to provide "telecommunications services" within the city. The Oklahoma Telecommunications Act of 1997 defines the term "telecommunications" to mean "the transmission, between or amongpoints specified by the user, of voice or data information of the user's choosing, without change in the form or content of the information as sent and received." 17 O.S. Supp. 1998, §139.102[17-139.102](25) (emphasis added). While it is impossible to decide whether each particular type of telecommunications provider is in fact a "telephone or telegraph corporation or association" under Article IX, § 2 of the Oklahoma Constitution, the Supreme Court has indicated that the rights granted to transmission companies in Article IX of the Oklahoma Constitution are not limited to what has historically been understood to constitute a "telephone or telegraph corporation or association."
¶ 15 The Oklahoma Supreme Court explicitly recognized this inData Transmission Company v. Corporation Commission, in which it held that a specialized common carrier that utilized microwave transmissions to provide private line telephone service was a transmission company within the meaning of Article IX of the Oklahoma Constitution. Data Transmission Company v. CorporationCommission, 561 P.2d 50, 57 (Okla. 1976). The Court expressly rejected the argument that Data Transmission Company did not fall within the provisions of Article IX because it was neither a telephone nor a telegraph corporation. In so holding, the Court stated that "[a]t the time of the adoption of this provision of the Oklahoma Constitution, computers and microwave data transmission were not in existence" and "it would be unwise to infer that by specifically including only telephone and telegraph companies, the founders of our constitution meant to exclude forever regulation by the Commission of companies who would transmit through a neoteric medium." Id. Other examples of services that have been held to be "telephone or telegraph" services include community antennae television service,[2]
radio, teletype, and phototelegraph. See, e.g., City ofWaterville v. Bartell Telephone TV Systems, 233 A.2d 711 (Maine 1967).
¶ 16 Thus, the legality of operating a telecommunications company in a municipality without a franchise under ArticleXVIII, § 5(a) of the Oklahoma Constitution depends on whether the company constitutes a "telephone or telegraph corporation or association" under Article IX, § 2 of the Oklahoma Constitution. If a telecommunications company constitutes a "telephone or telegraph corporation or association," it is not required to obtain a franchise from the municipality under Article XVIII, §5(a) of the Oklahoma Constitution to provide telecommunications services. In such case, the power of the municipality is limited to determining what grounds, streets, alleys, or highways the company may use in conducting its business. 18 O.S. 1991, §601[18-601].
¶ 17 A telecommunications company affected with a public interest, which is not a "telephone or telegraph corporation or association," is required to obtain a franchise to operate from the municipality in accordance with Article XVIII, § 5(a) of the Oklahoma Constitution. Whether the telecommunications provider[3] referenced in this question constitutes a "telephone or telegraph corporation or association" is a question of fact that cannot be answered in an Opinion of the Attorney General. 74 O.S. Supp. 1998, § 18b[74-18b](A)(5).
 III. ASSIGNMENT OF FRANCHISE RIGHTS
¶ 18 It may be generally stated that the rights granted to a company by franchise are considered to be property and that the rights are assignable, taxable and alienable. See City ofOwensboro v. Cumberland Telephone and Telegraph, 230 U.S. 58,65, 57 L.Ed. 1389, 33 S.Ct. 988, 990 (1913). Accordingly, telecommunications companies that obtain franchises in accordance with Article XVIII, § 5(a) of the Oklahoma Constitution may assign their franchise rights without submitting the issue to a vote of the people.
¶ 19 However, this general rule is not applicable to a "telephone or telegraph corporation or association" because the rights granted by Article IX, § 2 of the Oklahoma Constitution and by Title 18, Section 601 of the Oklahoma Statutes extend to all companies that provide these services. Under these provisions, all "telephone and telegraph corporation[s] or association[s]" organized or authorized to conduct a transmission business in Oklahoma are authorized to use the public grounds, streets, alleys, or highways without a franchise. If the telecommunications company at issue in this question constitutes a "telephone or telegraph corporation or association," the company is not required to obtain a franchise under ArticleXVIII, § 5(a) of the Oklahoma Constitution and, therefore, does not have franchise rights to assign.
 IV. FEES ASSESSED BY THE MUNICIPALITY
¶ 20 The question presented indicates that a charter municipality authorized a telecommunications company to pay for its use of a municipal right-of-way at the same usage rate established by the company's electric franchise. Apparently, other telecommunications companies are required to compensate the city at a different rate pursuant to a permitting system. In order to determine whether these actions were proper, it would be necessary to determine numerous factual issues which have not been presented in the question.
¶ 21 For example, the question does not describe the method by which one telecommunications company was authorized to pay the same rate established by its electric franchise. Further, if the rate paid by the other companies was charged pursuant to an ordinance, the precise language of the ordinance would have to be examined, and the timing of the ordinance's passage in relation to the authorization of the different rate by the municipality would have to be determined. In addition, the validity of the fee ordinances and authorizations under the state and federal Constitutions and the federal Telecommunications Act of 1996 would have to be decided. Resolution of these issues involve questions of fact which are outside the scope of an Opinion of the Attorney General. 74 O.S. Supp. 1998, § 18b[74-18b](A)(5).
¶ 22 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. A municipality may not authorize a company to begin providingtelecommunications services to the public pursuant to a franchisegranted in accordance with Article XVIII, § 5(a) of the OklahomaConstitution which allows the company to own and operate a systemfor the manufacture, transmission, distribution, and sale ofelectricity to the municipality and the public generally.
2. If a telecommunications company constitutes a "telephone ortelegraph corporation or association" under Article IX, § 2 ofthe Oklahoma Constitution it may operate without the grant of afranchise from a municipality. A telecommunications companyaffected with a public interest, which does not constitute a"telephone or telegraph corporation or association," is requiredto obtain a franchise in accordance with Article XVIII, § 5(a) ofthe Oklahoma Constitution.
Whether any particular telecommunications company is a"telephone or telegraph corporation or association" within themeaning of Article IX, § 2 of the Oklahoma Constitution is aquestion of fact which cannot be answered in a Opinion of theAttorney General. 74 O.S. Supp. 1998, § 18b(A)(5).
3. A telecommunications company that obtains a franchise inaccordance with Article XVIII, § 5(a) of the OklahomaConstitution may assign its franchise rights without submittingthe issue to a vote of the people. However, a telecommunicationscompany that constitutes a "telephone or telegraph corporation orassociation" is granted the right to use public grounds, streets,alleys, or highways in this State for the conduct of its businesswithout a franchise under Article IX, § 2 of the OklahomaConstitution and has no franchise rights to assign.
4. Whether a telecommunications company paid the proper feerequired by law turns on several questions of fact which cannotbe answered in an Opinion of the Attorney General. 74 O.S.Supp. 1998, § 18b(A)(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA KELLY HUNTER BURCH ASSISTANT ATTORNEY GENERAL
[1] The power of state and local governments to franchise telecommunications providers is also limited by the federal Telecommunications Act of 1996 ("the Act"). See, e.g., Gordon P. Williams, Jr., Municipal Regulation of Telecommunications:The Telecommunications Act of 1996 and the Facets of theParadigm, 28 Urb. Law. 745, 746 (1996). Section 253 of the Act provides "[n]o State or local statute or regulation, or other State or local legal requirement may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Id. In addition, Section 253 provides "[n]othing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis." Id.
[2] Cable television providers have also been granted the right to use the public roads and highways by statute in Oklahoma.See 69 O.S. 1991, § 1401[69-1401].
[3] Telecommunications providers that fall within the provisions of Article IX, § 2 of the Oklahoma Constitution, and therefore outside the franchising authority of municipalities, are still subject to regulation by the Oklahoma Corporation Commission. Title 17 O.S. Supp. 1998, § 131[17-131] of the Oklahoma Statutes requires that telecommunications providers obtain a Certificate of Convenience and Necessity from the Corporation Commission prior to providing such services.